## CALEB DROWN *versus* THE PAWTUCKET BANK.

Where the holder of a promissory note delivers it to a bank, with directions to appropriate the proceeds to a specific object, the bank may realize the proceeds, either by discounting it, or by collecting it of the maker at its maturity, if the holder does not make an election.

On the day before the discount day of a bank, J. I., the holder of a promissory note for the sum of $625, payable in about five months from that time without interest, and indorsed in blank, brought it to the bank, and requested the cashier to take it and appropriate the sum of $620·83, towards the payment of certain notes held by the bank. No express directions were given by J. I. as to the mode in which the proceeds should be realized. The bank did not realize the proceeds by discounting the note, but collected it at its maturity. It was *held*, that this was not a violation of the trust upon which the note was delivered, and that J. I. was not entitled to reclaim the note, or its proceeds, from the bank.

ASSUMPSIT for money had and received.

At the trial it appeared, that on July 21, 1829, the defendants held a note for the sum of $900 or upwards, made by the Pawtucket Bleaching and Calendering Company and indorsed by Archibald Kennedy, which note became due on July 23, 1829 , also an accepted draft on the same company for the sum of $220·83, drawn and indorsed by Perrin & Skinner, which became due on July 12, 1829 ; and a note for the sum of $300, made by the same company and indorsed by the plaintiff, which note became due on the 18th of the same July. The acceptance and notes were not paid at maturity ; and the defendants gave due notice thereof to the drawers and indorsers. The same company were further indebted to the defendants to the amount of several thousand dollars.

The plaintiff offered as a witness, Amos Tillinghast, the cashier of the Pawtucket Bank, who testified, that on July 21, 1829, Jabel Ingraham, one of the members of the Pawtucket Bleaching and Calendering Company, brought to the bank a note for the sum of $625, dated January 17, 1829, made by the Hillsborough Manufacturing Company, payable to Paine & May, or their order, in eleven months, and indorsed by Paine & May and by the Pawtucket Bleaching and Calendering Company ; that Ingraham, when he left the note, requested the witness to take it and appropriate the sum of

$300 towards the payment of the note indorsed by Kennedy, the sum of $220·83, to the payment of the acceptance in favor of Perrin & Skinner, and the sum of $100 toward the payment of the note indorsed by the plaintiff; that the 21st of July 1829 was Tuesday, and that the usual discount day of the bank was Wednesday ; that he supposed the note was left for discount, though nothing was said about discounting it, and no conversation was had between him and Ingraham tending to show for what purpose it was left, except as above stated ; and that immediately after Ingraham left the note, the witness informed Kennedy of what had been done.     The defendants objected to the admission of the testimony of the cashier, so far as it related to his supposition of the intention of Ingraham in leaving the note at the bank.

It appeared that the defendants did not discount the note, and that they had never discharged Kennedy or Perrin & Skinner from their liabilities ; that after the date of this transaction, the defendants commenced an action against the plaintiff on his indorsement, and recovered judgment ; and that this judgment remained in full force.

On July 24, 1829, the Pawtucket Bleaching and Calendering Company, which consisted of Ingraham and David Wilkinson, assigned their property to the plaintiff, in trust for the purpose of paying the debts of the company.     By virtue of this assignment, the plaintiff claimed the proceeds of the note made by the Hillsborough Manufacturing Company, which had been collected by the defendants.

In October 1829, the plaintiff informed Tillinghast, that this note had been assigned to him, and a short time before it became due, it was demanded of Tillinghast by a son of the plaintiff, as he said, by his father's order. . After the note became due, the plaintiff demanded the proceeds.     But the defendants claimed the right to hold the note and its proceeds, to be appropriated in the manner specified by Ingraham. Judgment was to be entered for the plaintiff or the defendants, according to the opinion of the Court, upon these facts, or such of them as were properly admitted in evidence.

*Warren* and *Sampson*, for the plaintiff.     The note made by the Hillsborough Manufacturing Company was delivered by

8 *

*Drown*
*v.*
Pawtucket
Bank.

*Oct. 22a*

Ingraham to the defendants, for a special purpose, which was, that it should be discounted, and the money immediately applied in the manner specified by him. It was not so discounted, and an immediate right to an action of trover for such note accrued to the Pawtucket Bleaching and Calendering Company. The note therefore passed to the plaintiff by virtue of their assignment. As the note had come into the hands of the defendants for a special purpose, they could have no lien on it for a general balance due to them. *Lawrence* v *Stonington Bank,* 6 Connect. R. 521 ; Whitaker on Lien, 47, 49, 50 ; *Walker* v. *Birch,* 6 T. R. 258 ; *Green* v. *Farmer,* 4 Burr. 2214 ; *Jarvis* v. *Rogers,* 15 Mass. R. 395 ; *Braden* v. *Gardner,* 4 Pick. 456 ; *Burn* v. *Brown,* 2 Stark. R. 272 ; *Lucas* v. *Dorrien,* 7 Taunt. 278.

*W. Baylies,* for the defendants, to the point, that the note was delivered to the defendants as a pledge or collateral security, and that the indorsers of the notes specified by Ingraham thereupon acquired an interest in it which could not be devested by the assignment, cited *Bowman* v. *Wood,* 15 Mass. R. 534 ; Story on Bailm. 201, 214 ; *Hatch* v. *Brooks,* 2 Mass. R. 293 ; *Hall* v. *Marston,* 17 Mass. R. 575.

*Per Curiam.* Although the cashier was a competent witness, and the agent of the bank, and although his acts and doings, as such agent, would be binding upon the bank, yet being called upon to testify as a witness, his testimony is to be construed like that of any other witness, and the question is, what is proved by the testimony. The witness states precisely what took place between himself and Jabel Ingraham, the agent of the Bleaching and Calendering Company, upon the subject of the deposit of the notes. The witness may be perfectly correct in his recollection, and at the same time incorrect in his logic. He *supposed* that the note was left for the purpose of being discounted, though nothing was said about it by the agent of the company.

The case of the plaintiff depends upon showing, that the note was deposited with the cashier, as agent of the bank, for the specific purpose of being discounted immediately, and that inasmuch as the bank had not thus discounted it, the trust upon which it was thus deposited had been violated, or the

purpose for which it was appropriated, had been frustrated and disappointed, so that the company had a right to reclaim 't or transfer it by their assignment to the plaintiff, in trust for their creditors. Now we think the evidence falls short of establishing this fact. It leaves it at least as probable that it was for collection, as that it was for discount, the one being as much within the ordinary scope of the operations of the bank as the other. If these probabilities were in all respects equal, it would seem that, by analogy to the well-known rule respecting payments, that where the party leaving a security, directs the appropriation of the proceeds to several specific objects, but makes no election as to the mode in which those proceeds shall be raised, whether by discounting the note, or by holding and collecting it, the party receiving the security would have the right of making such election. The general or blank indorsement would vest the legal title to the note in the bank, and as the owners, they would have a right to dispose of it in such manner as they saw fit, subject only to the obligation of applying the proceeds, when realized, in the manner directed by the party transferring. To this duty they must be bound, by the act of receiving it on the terms proposed.

Besides, upon the very concise and naked statement of the transaction by the cashier, it is very doubtful, whether the bank would have had a right to turn the note into immediate cash, at the expense of the creditor, by discounting the note and deducting the discount, without an express direction or permission to that effect by the party depositing the security. And it may be remarked, in passing, as a slight circumstance, that if the note of the Hillsborough Manufacturing Company was without interest, which appears probable from the description of it, the net amount, $625, after deducting the discount for five months, would not be sufficient to cover the three appropriations, specified by Ingraham. Perhaps the cashier, from his knowledge of the relative situation of the parties, their habits, wishes and views, might be well warranted in his supposition, that it was the intention or expectation of Ingraham that the note would be discounted ; but as he has stated all that took place on the subject, we are satisfied

` Drown
v.
Pawtucket
Bank.

that there was no such special trust, or specific appropriation to the sole purpose of a discount, as to justify the conclusion, that the bank, without any other notice or request on the part of the debtors, can be held to have lost their interest in the security, by any violation of trust, or non-compliance with the specific appropriation, so as to authorize the debtors, or their assignee, to reclaim the security or the proceeds thereof